FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

May 21, 2025

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

CHRISTOPHER B.,[1]

                    Plaintiff,

        v.

FRANK BISIGNANO,
Commissioner of Social Security,[2]

                    Defendant.

No.   1:24-cv-3160-EFS

**ORDER REVERSING THE ALJ'S DENIAL OF BENEFITS, AND REMANDING FOR MORE PROCEEDINGS**

---

[1] For privacy reasons, Plaintiff is referred to by first name and last initial or as "Plaintiff." *See* LCivR 5.2(c).

[2] Frank Bisignano was confirmed as the Commissioner of Social Security on May 6, 2025. Pursuant to Federal Rule of Civil Procedure 25(d) and 42 U.S.C. § 405(g), he is hereby substituted as the Defendant.

Plaintiff Christopher B. asks the Court to reverse the Administrative Law Judge's (ALJ) denial of Title 16 benefits. Plaintiff claims he is unable to work due to bipolar disorder, anxiety, schizophrenia, insomnia, learning disabilities, left ankle injury/pain, and hepatitis C. Because the ALJ's evaluation of the medical opinions pertaining to Plaintiff's mental disorders is not supported by substantial evidence, the ALJ erred. This matter is remanded for further proceedings.

## I.    Background

On October 27, 2020, claiming an inability to work due in part to the physical and mental impairments listed above, Plaintiff applied for benefits under Title 16.[3] Plaintiff initially claimed an onset date of January 8, 2020, but later amended the alleged onset date to coincide with the application date.[4]

---

[3] AR 262.

[4] AR 66, 267.

After the agency denied benefits at the initial and reconsideration stages,[5] ALJ Sue Liese held a telephone hearing in July 2023, at which Plaintiff and a vocational expert testified.[6] Plaintiff testified that he lived with his girlfriend in a house, and that he had a GED.[7] When asked about his work at Sherwin Williams, Plaintiff said he was a paint mixer and spent his day delivering paint.[8] In a typical day he said he would play with his dog, play games on the computer, and watch movies with his girlfriend, and that he did not leave the house much because he did not feel safe.[9] Plaintiff said that his groceries were delivered.[10] He said he does not do laundry often because he does not go out.[11] He goes to the clinic once every two weeks and his

---

[5] AR 149-153, 161-163.

[6] AR 60-88.

[7] AR 71.

[8] AR 72.

[9] *Id.*

[10] AR 72-73.

[11] AR 73.

girlfriend goes with him.[12] He said he doesn't do well with people generally and especially authority figures.[13]

Plaintiff said that he does not have any productive hobby and that he used to go to the clinic every other day but now goes twice a month.[14] He said that he could not work because he would be too anxious and could not get along with authority figures.[15] He said his medication makes him sleepy and he naps 4 times day.[16] His doctor said that there is no way to change the time he takes the medication to alleviate the drowsiness.[17]

Plaintiff said that he was able to heat frozen dinners but he has issues with hygiene and feels like doing nothing and only showers once

---

[12] AR 73-74.

[13] AR 74.

[14] AR 75.

[15] AR 76.

[16] AR 77.

[17] AR 77-78.

or twice a month.[18] He said that he has trouble finishing what he starts, his ability to sleep varies, and he is often tired after staying awake all night.[19] He said he has racing thoughts at night and worries he will die young.[20] Plaintiff said he has issues with authority figures and has trouble getting along with others and that at times he will get angry and "get into trouble."[21] Plaintiff said that recently at this clinic he had gotten into trouble because he was nervous and pacing and got into an argument with staff.[22] He said he has gotten into physical fights both on the job and in public places.[23]

---

[18] AR 78-79.

[19] AR 79.

[20] *Id.*

[21] AR 80.

[22] AR 80-81.

[23] AR 81.

The ALJ issued a decision denying benefits.[24] The ALJ found Plaintiff's alleged symptoms unsupported by the medical evidence and his activities.[25] As to the medical opinions, the ALJ found:

- The opinions of state agency evaluators Robert Stuart, MD; Christine Harmon, MD; Jon Anderson, PhD; and Andrew Forsyth, PhD, to be generally persuasive.

- The examining opinions of Thomas Genthe, PhD, and Katrina Higgins, PhD, to be not persuasive.

- The examining opinions of Marquetta Washinton, ARNP, to be not entirely persuasive.

- The treating opinions of Jennifer Broadt, MPAS, PA-C, to be not persuasive.[26]

As to the sequential disability analysis, the ALJ found:

---

[24] AR 14-33. Per 20 C.F.R. § 416.920(a)–(g), a five-step evaluation determines whether a claimant is disabled.

[25] AR 23-25.

[26] AR 25-26.

- Step one: Plaintiff has not engaged in substantial gainful activity since October 27, 2020, the alleged onset date.

- Step two: Plaintiff had the following medically determinable severe impairments: schizoaffective disorder, depressive disorder, and anxiety.

- Step three: Plaintiff does not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments and specifically considered Listings 12.04 and 12.06.

- RFC: Plaintiff has the RFC to a full range of work at all levels with the following nonexertional limitations:

  > [He] can remember, understand, and carry out simple instructions; he can perform work that requires only simple workplace decisions with few, if any, workplace changes; he can do work that requires no interaction with the general public to perform the work tasks but this does not preclude work environments where the public may be present; he can respond appropriately to supervision, but should not be required to work in close coordination with coworkers where teamwork is required

- Step four: Plaintiff was not capable of performing past relevant work as a paint mixer/merchandise deliverer.

1

2
- Step five: Plaintiff is capable of performing work as a
  packager, janitor, or housekeeper/cleaner.[27]

3

4
Plaintiff timely requested review of the ALJ's decision by the

5
Appeals Council.[28] Plaintiff timely requested that this Court review the

6
denial of disability.

7
## II.    Standard of Review

8
The ALJ's decision is reversed "only if it is not supported by

9
substantial evidence or is based on legal error" and such error

10
impacted the nondisability determination.[29] Substantial evidence is

11
"more than a mere scintilla but less than a preponderance; it is such

12

13
_____

14
[27] AR 20-28.

15
[28] AR 257, 1–6.

16
[29] *Hill v. Astrue*, 698 F.3d 1153, 1158 (9th Cir. 2012). *See* 42 U.S.C. §

17
405(g); *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012),

18
*superseded on other grounds by* 20 C.F.R. § 416.920(a) (recognizing that

19
the court may not reverse an ALJ decision due to a harmless error—

20
one that "is inconsequential to the ultimate nondisability

21

22
determination").

23

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[30]

### III.   Analysis

Plaintiff argues the ALJ erred when evaluating the opinions of consultative examiners Dr. Genthe and Dr. Higgins, as well as treating source PA-C Broadt; erred in her evaluation of whether Plaintiff's mental impairments met a listing at step three; and erred in rejecting Plaintiff's subjective complaints.[31] The Commissioner argues the ALJ's findings regarding the medical opinion evidence and Plaintiff's

---

[30] *Hill*, 698 F.3d at 1159 (quoting *Sandgathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997)). *See also Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007) (The court "must consider the entire record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion," not simply the evidence cited by the ALJ or the parties.) (cleaned up); *Black v. Apfel*, 143 F.3d 383, 386 (8th Cir. 1998) ("An ALJ's failure to cite specific evidence does not indicate that such evidence was not considered[.]").

[31] ECF No. 8.

subjective claims are supported by substantial evidence, and that there was no error at step three.[32] As is explained below, the ALJ erred when evaluating the medical opinions; on remand, the ALJ is to reevaluate the medical opinions and testimony, develop the record as needed, and properly consider Plaintiff's testimony.

## A.    Medical Opinions: Plaintiff establishes consequential error.

Plaintiff argues the ALJ erred by failing to properly consider the supportability and consistency of Dr. Genthe, Dr. Higgins, and PA-C Broadt's opinions and failed to consider the full record while selectively choosing only portions of the medical record consistent with her own RFC.  The Commissioner argues the ALJ reasonably articulated her reasoning that the examination findings of the medical sources did not support their opinions.  After considering the medical opinions in question and the reasons given by the ALJ to discount them, the Court determines the ALJ's evaluation of the medical opinions of Dr. Genthe and Dr. Higgins is not supported by substantial evidence.

_____

[32] ECF No. 17.

1     1.    <u>Standard</u>

The ALJ must consider and articulate how persuasive she found each medical opinion and prior administrative medical finding, including whether the medical opinion or finding was consistent with and supported by the record.[33] The factors for evaluating the persuasiveness of medical opinions include, but are not limited to, supportability, consistency, relationship with the claimant, and specialization.[34] Supportability and consistency are the most important factors.[35] When considering the ALJ's findings, the Court is constrained to the reasons and supporting explanation offered by the ALJ.[36]

The regulations define these two required factors as follows:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations

---

[33] 20 C.F.R. § 416.920c(a)–(c); *Woods v. Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022).

[34] 20 C.F.R. § 416.920c(c)(1)–(5).

[35] *Id.* § 416.920c(b)(2).

[36] *See Burrell v. Colvin*, 775 F.3d 1133, 1138 (9th Cir. 2014).

presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.[37]

2.    Dr. Genthe's Examination and Opinion

On December 3, 2019, Plaintiff was examined by Thomas Genthe, PhD, at the request of the Washington State Department of Health and Social Services.[38] Dr. Genthe's report included a clinical interview with psychosocial history, medical treatment history, educational/work history, substance use history, and activities of daily living; a prognosis; Dr. Genthe's clinical findings and diagnosis; a mental status examination; and medical source statement.[39] Dr. Genthe also reported that he administered a Personality Assessment Inventory test but did

---

[37] 20 C.F.R. § 416.920c(c)(1)–(2).

[38] AR 371-379.

[39] *Id.*

not interpret the results because the validity scale score indicated an issue with Plaintiff's following of test instructions.[40]

Dr. Genthe noted that Plaintiff reported that he was single, currently homeless, and had difficulty interacting with others.[41] Dr. Genthe also noted that Plaintiff reported a 3-month psychiatric hospitalization in 2009, current mental health treatment and a history of being prescribed multiple psychotropic medications, that he had dropped out of the 9th grade but obtained a GED, that he had last worked 3 years prior and left his job because he could not get along with others, and that he was substance free.[42] Plaintiff reported to Dr. Genthe that he was able to groom himself, prepare meals, shop and attend appointments.[43]

On mental status examination, Plaintiff was well-groomed, he had limited speech and did not provide any spontaneous input, he was

---

[40] AR 378-379.

[41] AR 371.

[42] AR 372.

[43] AR 373.

cooperative and appeared to be genuine in his responses, and he stated that his mood was "okay" but his affect was anxious.[44] Plaintiff was oriented but his thought process was impaired; his perception was limited; he had normal immediate memory but impaired recent and remote memory; he had a limited fund of knowledge; he had impaired abstract thought; he had poor insight; and he had "significant difficulties" in following the conversation.[45]

Dr. Genthe opined that Plaintiff would have a marked impairment in performing the following basic work activities: to follow detailed instructions, learn new tasks, adapt to changes in a routine work setting; be aware of normal hazards and take appropriate precautions; communicate and perform effectively in a work setting; maintain appropriate behavior in a work setting, complete a normal work day and work week without interruptions, and set realistic goals and plan independently.[46] Dr. Genthe also opined that Plaintiff would

---

[44] AR 376-377.

[45] AR 376-378.

[46] AR 374-375.

have a moderate impairment in performing the following basic work activities: perform activities with a schedule, maintain attendance and be punctual; perform routine tasks without supervision; and ask simple questions or request assistance.[47]  Dr. Genthe opined that the limitations were not the result of drug use, and would last for 12 months.[48]

Dr. Genthe made the following summary:

> In way of summation, [Plaintiff] presented with primary mental health claims as the reasons why he was currently not employed. Based on behavioral observations made, information gained during the clinical interview, and PAI profile scores, he appears to meet DSM-5 criteria for Schizophrenia, Attention Deficit Hyperactivity Disorder and Major Depressive Disorder. Despite having taken prescribed medication for some time, his current regimen does not appear to be adequately targeting interfering symptoms, which are likely to interfere with his ability to initiate or maintain future employment. Additionally, continued involvement in weekly mental health counseling is also highly recommended to address various psychosocial stressors that contribute to his current level of emotional distress. From a psychological perspective, due to the chronic nature of [Plaintiff's] symptoms, his prognosis is viewed as poor. It is unlikely that his conditions will improve to the point of him being able to resume normal

---

[47] *Id.*

[48] AR 375.

work activities within the next 12 months. Thus, a referral for SSI track appears warranted and appropriate.[49]

The ALJ found the opinion of Dr. Genthe to be not persuasive. Her evaluation of Dr. Genthe's report and opinion was flawed, however.

The ALJ articulated the following reasoning to support her decision to discount Dr. Genthe's opinion:

> Thomas Genthe, PhD, evaluated the claimant in 2019 and stated that he had marked mental limitations, including marked limitation in his ability to follow detailed instructions, learn new tasks, adapt to changes in a routine work setting, be aware of normal hazards and take appropriate precautions, communicate and perform effectively in a work setting, maintain appropriate behavior in a work setting, complete a normal work day and work week without interruptions, and set realistic goals and plan independently (Ex. B1F/6). This statement is partially supported by the claimant's reported symptoms, including emptiness, loneliness, tearfulness, anhedonia, distraction, careless mistakes, disorganization, boredom, procrastination, restlessness, and auditory hallucinations (Ex. B1F). This opinion is not persuasive, as Dr. Genthe's examination findings, including generally open, cooperative, and friendly manner, speech free from paranoid ideation, delusional thinking, or hallucinations, and full orientation, do not support this relatively extreme level of limitation (Ex. B1F). Furthermore, these limitations are inconsistent

---

[49] AR 375-376.

with the subsequent record, which indicates some response to medication, sustained sobriety, and moderate findings on objective mental status examination (Ex. B6F, B13F).

Plaintiff argues that the ALJ erred in both her assessment of the supportability factor and the consistency factor. The Court agrees. Initially, the Court notes that the ALJ's reasoning regarding the supportability factor is limited to one single sentence:

> This opinion is not persuasive, as Dr. Genthe's examination findings, including generally open, cooperative, and friendly manner, speech free from paranoid ideation, delusional thinking, or hallucinations, and full orientation, do not support this relatively extreme level of limitation (Ex. B1F).

While the ALJ has correctly stated that Plaintiff was cooperative, oriented and appeared to be able to distinguish reality, she mischaracterizes the mental status examination findings by describing them as normal and benign. The mental status examination findings were overwhelmingly not normal. As noted above, on mental status examination, Plaintiff had limited speech, anxious affect, impaired thought process, limited perception, impaired recent and remote memory, limited fund of knowledge, impaired abstract thought, poor insight, and significant difficulties in following the conversation.

While the ALJ need not cite to and discuss every piece of evidence,[50] the ALJ did not take any effort to discuss how most of Dr. Genthe's mental status examination findings supported his opinion. By focusing on the limited findings on mental status examination that showed minimal symptoms and ignoring the majority of findings showing more severe limitations, the ALJ cherrypicked from the record and did not meaningfully explain her finding.[51]

The ALJ's consideration of the consistency factor was cursory and vague. The ALJ's consideration of the consistency of Dr. Genthe's opinions to the medical record was limited again to one single sentence:

―――――――――――――――

[50] *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (stating that "in interpreting the evidence and developing the record, the ALJ does not need to discuss every piece of evidence" (quotation marks omitted)).

[51] *See Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (recognizing it is improper for an ALJ to "reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result).

Furthermore, these limitations are inconsistent with the subsequent record, which indicates some response to medication, sustained sobriety, and moderate findings on objective mental status examination (Ex. B6F, B13F).[52]

When the ALJ refers to Exhibit B6F, she is referring to the consultative examination of Dr. Higgins.[53] The ALJ errs in characterizing Dr. Higgins' finding on mental status examination as "moderate." Dr. Higgins stated that on mental status examination, Plaintiff arrived early (by video call) but was unkempt, was restless and would spin/rock in his seat or pace, was mildly disoriented and agitated, had an irritable mood and affect, had trouble with serial 7's, had impaired immediate memory, had a fair fund of knowledge, was unable to perform abstract thinking or reasoning, and had poor insight and judgment.[54] Moreover, the ALJ failed to address the fact that as the Court will discuss later, Dr. Higgins' opinions as to Plaintiff's limitations were consistent with those of Dr. Genthe.

---

[52] AR 26.

[53] AR 635-640.

[54] AR 637-638.

1
2
3
4
5
6
7
8
9
10

The ALJ's offered reasoning that Plaintiff later achieved sustained sobriety and showed "some" improvement are also not good reasons to discount Dr. Genthe's opinions.  The statement that there was "some" improvement is vague and does little to explain the alleged inconsistency. Additionally, the Court notes that Plaintiff's sustained sobriety when viewed in the context of Dr. Higgins' opinions supports rather than contradicts Dr. Genthe's opinions because at the time that Dr. Higgins examined Plaintiff he was in sustained remission from all substances and Dr. Higgins still assessed marked limitations.

11
12
13
14
15
16
17
18
19

Additionally, the ALJ erred in citing to the medical records at B13F, which generally showed "unremarkable" mental status findings, such as mood and affect.[55] Unlike Dr. Genthe, who examined Plaintiff prior to the Covid-19 pandemic, and Dr. Higgins who saw Plaintiff via video during the pandemic, the treatment that was provided in the notes in B13F was provided primarily via telephone.[56]  To the extent that many of the symptoms to be considered on a mental status

20
21
22
23

---

[55] AR 26.

[56] AR 838-1102.

examination are dependent on observation, the Court finds the fact that the provider checked off many boxes as "unremarkable" was not surprising given that the providers' interactions with the Plaintiff occurred by telephone. Therefore the unremarkable mental-status findings cited in B13F were not a valid reason to discredit Dr. Genthe's opinions.

The ALJ's supportability evaluation and consistency evaluation are lacking and are not supported by substantial evidence. The Court concludes that a remand is warranted for the ALJ to properly evaluate Dr. Genthe's opinions with due consideration of both the supportability and consistency factors.

3.    Dr. Higgins' Opinions

Because the Court has found that remand is warranted, it will address this issue briefly.

On August 16, 2021, Plaintiff was examined by Katrina Higgins, PhD, at the request of the Commissioner.[57] The examination was

---

[57] AR 635-639.

performed via a video call.[58] Dr. Higgins stated that she reviewed

medical records from Comprehensive Healthcare, as well as

Dr. Genthe's report.[59] Plaintiff described to Dr. Higgins that he cannot

get along with others, that he has felt depression daily since his

mother's suicide when he was 12, that he is irritable and has punched

holes in walls, that his medication helps him sleep but makes him

tired, that he has restlessness, that he angers easily and isolates to

avoid trouble, that he hears voices when not taking his medication,

that he thinks God sends him messages, and that people are out to get

him.[60]

Plaintiff reported that he had been hospitalized for 3 months

about 7 years prior, that he had seen counselors off and on but not

recently, and that he had taken his current medication for 3 years and

thought it was helpful but made him tired.[61] He reported that he had

---

[58] AR 635.

[59] *Id.*

[60] AR 635-636.

[61] AR 636.

not used substances for a year and that he had past arrests for assault.[62]  He reported trouble in school and dropping out in 10th grade but later getting his GED, working as a painter but being fired for theft, and quitting numerous jobs due to conflicts with coworkers.[63] On mental status examination, Plaintiff appeared early but was unkempt, was restless and would spin/rock in his seat or pace, was mildly disoriented and agitated, had an irritable mood and affect, had trouble with serial 7's, had impaired immediate memory, had a fair fund of knowledge, was unable to perform abstract reasoning or reasoning, and had poor insight and judgment.[64]

Dr. Higgins diagnosed Plaintiff with schizoaffective disorder, depressive type; cannabis use disorder, in remission; opioid use disorder, in remission; and amphetamine use disorder, in remission.[65] In support of her diagnosis, Dr. Higgins explained that Plaintiff had

---

[62] *Id.*

[63] AR 637.

[64] AR 637-638.

[65] AR 638.

difficulty in the interview and was restless and tangential.[66]

Dr. Higgins further explained:

> His records describe a history of depression, interpersonal difficulties, poor anger management, and auditory hallucinations. Per his records he was diagnosed with Major Depressive Disorder, single episode, severe without psychotic features, Major Depressive Disorder with anxious distress, ADHD combined presentation, Schizophrenia, cannabis use disorder, heroin use disorder, stimulant use disorder, and Opioid dependence. Depression and psychosis are consistent themes in his medical records. Given his records and his presentation today, Schizoaffective Disorder, depressive type is an appropriate diagnosis.[67]

Dr. Higgins opined that Plaintiff's prognosis for employment was poor.[68]  She opined that because of impaired reality testing Plaintiff was not able to manage his own funds.[69] Dr. Higgins opined the following as to expected workplace limitations:

> [Plaintiff] has a history of conflict in the workplace and likely will continue to have difficulty interacting appropriately with supervisors, coworkers, and the public. I don't believe he will be able to perform even simple and

---

[66] *Id.*

[67] *Id.*

[68] AR 639.

[69] *Id.*

routine tasks on a consistent basis. I believe he will have difficulty maintaining attendance in the workplace as a result of his psychological symptoms. I do not believe he could deal with the usual stress in a competitive work environment.[70]

The ALJ articulated the following reasoning as to her consideration of Dr. Higgins opinions:

Katrina Higgins, PsyD, the consultative psychological examiner, stated that the claimant will likely continue to have difficulty interacting appropriately with supervisors, coworkers, and the public and that he will likely be unable to perform even simple and routine tasks on a consistent basis (Ex. B6F). Dr. Higgins stated that the claimant would have difficulty maintaining attendance in the workplace and would not be able to deal with the usual stress of a competitive work environment (Ex. B6F). This opinion is not persuasive, as the extreme limitations indicated by Dr. Higgins are not supported by the moderate objective findings of her examination, including mild to moderate limitations in concentration and memory (Ex. B6F). Furthermore, this level of limitation is inconsistent with mental status examinations in the course of treatment, which show good concentration and attention span and improvement with medication (Ex. B13F/36, 101).[71]

---

[70] *Id.*

[71] AR 26.

The ALJ has repeated many of the mistakes she made when assessing Dr. Genthe's opinion, such as her failure to consider the consistency of this opinion to those of Dr. Genthe and PA-C Broadt. Additionally, the ALJ has repeated her error of characterizing the severe symptoms found on Dr. Higgins' mental status examination such as his unkempt appearance, agitation, difficulty following the conversation, impaired memory, and poor insight and judgement, as "moderate."[72]

Additionally, the ALJ cited to Exhibit 13F/36, a treatment note for a May 19, 2022 office visit with Aubrie Duke, in support of her reasoning.[73] This treatment note is not supportive of the ALJ's finding. Plaintiff presented after missing his last two appointments and running out of medication.[74]  The treatment notes from the specific page cited state that Plaintiff had run out of medication because he was depressed and had low motivation to go to the pharmacy to pick up

---

[72] AR 637-638.

[73] AR 873.

[74] AR 872.

his medication.[75] Plaintiff reported his mood as "Okay" but also reported "severe depression" with symptoms of tearfulness, low motivation, low energy, and isolation.[76] He also reported long-standing symptoms of anxiety.[77] Ms. Duke noted that her impression was a dysthymic and anxious mood, and that Plaintiff was struggling with anxiety and depression.[78]

The ALJ also cited to 13F/101, a treatment note from an October 6, 2022, visit with Ms. Duke.[79] Ms. Duke noted that Plaintiff felt "better" after taking his medications but continued to struggle with low motivation, intermittent depression, anxiety, and isolating behaviors.[80] Also, it was Ms. Duke's impression that even after considering

---

[75] *Id.*

[76] *Id.*

[77] *Id.*

[78] *Id.*

[79] AR 938.

[80] *Id.*

improvement from medication, Plaintiff had an anxious mood and mild psychomotor agitation.[81]

As noted above, it is unclear to the Court whether the ALJ correctly considered the consistency of the opinions of the examining and treating sources, and whether she properly considered the supportability of their opinions. To the extent that the Court has already found remand to be warranted, this issue will be addressed on remand.

**B.    Symptom Reports:  This issue is moot.**

Plaintiff argues that the ALJ failed to provide valid reasons for discounting his subjective complaints. Because the Court has remanded the case with direction that the ALJ re-evaluate the medical opinions and Plaintiff's impairments, the ALJ will be required to re-evaluate Plaintiff's symptom reports. This issue is therefore moot.

**C.    Step Three:  Plaintiff established consequential error.**

Plaintiff argues the ALJ failed to properly consider whether Plaintiff met the listing criteria for Listing 12.04 and 12.06. As

---

[81] *Id.*

explained above, Plaintiff met his burden in showing that the ALJ erred in analyzing the medical opinions and this error bled over into her analysis at step three. On remand, the ALJ will be required to make a new determination at step three.

**D.     Remand for Further Proceedings**

Plaintiff submits a remand for payment of benefits is warranted. The decision whether to remand a case for additional evidence, or simply to award benefits, is within the discretion of the court."[82] When the court reverses an ALJ's decision for error, the court "ordinarily must remand to the agency for further proceedings."[83]

---

[82] *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987) (citing *Stone v. Heckler*, 761 F.2d 530 (9th Cir. 1985)).

[83] *Leon v. Berryhill*, 880 F.3d 1041, 1045 (9th Cir. 2017); *Benecke*  379 F.3d at  595  ("[T]he proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation"); *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014).

The Court finds that further development is necessary for a proper disability determination. Here, it is not clear what, if any, additional limitations are to be added to the RFC. As noted above, on remand the ALJ is to properly consider the medical opinions, Plaintiff's alleged impairments, and Plaintiff's symptom reports and make a proper determination whether Plaintiff meets Listings 12.04 or 12.06. The Court additionally directs that, if necessary, the ALJ call a medical expert to testify as to whether Plaintiff equals Listing 12.04 or 12.06.

## IV.   Conclusion

Plaintiff establishes the ALJ erred. The ALJ is to develop the record and reevaluate—with meaningful articulation and evidentiary support—her evaluation of the medical opinions, Plaintiff's impairments, and Plaintiff's subjective complaints.

Accordingly, **IT IS HEREBY ORDERED**:

1.   The ALJ's nondisability decision is **REVERSED, and this matter is REMANDED to the Commissioner of Social Security for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g)**.

2.     The Clerk's Office shall **TERM** the parties' briefs, **ECF Nos. 8 and 16**, enter **JUDGMENT** in favor of **Plaintiff**, and **CLOSE** the case.

IT IS SO ORDERED. The Clerk's Office is directed to file this order and provide copies to all counsel.

DATED this 21st day of May 2025.

_____
EDWARD F. SHEA
Senior United States District Judge